IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL WILLIAMS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-CV-0365 |
| | : | |
| THE GEO GROUP, INC., *et al.* | : | |
|     Defendants. | : | |

*Pro se* Plaintiff Daniel Williams is a pretrial detainee currently confined at the George W. Hill Correctional Facility ("GWHCF") in Thornton, Pennsylvania. He filed this civil rights action pursuant to 42 U.S.C. § 1983 and asserts claims against the GEO Group, Inc., Delaware County, and the Delaware County Jail Oversight Board.[1] Williams also filed a Motion to Proceed *in forma pauperis* and submitted a copy of his institutional account statement in support of his application.

For the following reasons, Williams is granted leave to proceed *in forma pauperis*. His Complaint is now subject to the screening requirements under the *in formal pauperis* statute, 28 U.S.C. § 1915(e)(2)(B), will shall be dismissed without prejudice.

Williams will be granted leave to file an amended complaint as set forth more fully below.

I.    FACTUAL ALLEGATIONS

The bulk of Williams's factual allegations center on a December 14, 2021 incident at GWHCF. Williams alleges that on this date, prison officials employed by Defendant GEO Group, Inc. searched his cell and found drugs that were allegedly planted there. Williams states

---

[1] Williams incorrectly refers to the Delaware County Jail Oversight Board in his Complaint as the Delaware County Jail Oversight Committee.

that in conjunction with the search, "a lot of [his] personal property was taken by the correctional officers." He alleges that shortly after the search, Sergeants S. Brown and Richburg "savagely beat[]" him, "dragged [him] into a cell" while he was handcuffed and "punched and stomped [him]." Williams further alleges that as a result of this encounter, he "sustained injuries to [his] thigh, knees, neck, and back," and that he suffers from "severe psychological trauma."

Williams also raises a many allegations about the conditions of his confinement at GWHCF, though none of these allegations are tied to any individual Defendant. For example, Williams alleges that:

- There was no television "on the block . . . [at] SMU[,] and [in] the hole."
- The heat did not work "on SMU . . . or on 10C" for a month.
- He could not access the law library.
- He was unable to make a legal call for a month.
- He was not allowed to shower for a week in December, 2021.
- He has not had gym access in two years.
- He was on "constant lockdown without rec or showers."
- He was "forced to sleep in a cell that had asbestos on the wall."
- He was twice fired from his job.
- Muslim inmates are not allowed to have religious services.
- He "has never been to medical for a sick call in 30 months."
- He was "sexually surveilled" on two different occasions.
- The "maximum custody inmates" are not allowed to have jobs, are forced to walk around with restraints on, and must eat in their cells.
- He was locked in "a feces infested, fly infested urine smelling shower" for over two hours because "Sgt McCafferty felt like it was what [he] deserved."
- There is no "black law library" and no Black maintenance workers.
- A corrections officer stated that "you should've let that nigger hang."
- His property was stolen by corrections officers.

Finally, Williams alleges that Defendants violated his Sixth Amendment right to a speedy trial and have engaged in racial bias and "widespread discrimination of minorities." Williams seeks $25,000 in compensatory damages and $25,000 in punitive damages.

**II.     STANDARD OF REVIEW**

The Court grants Williams leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[2] Given that, the Court must assess pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) whether the Complaint must be dismissed for failure to to state a claim.

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Thus, to proceed, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). In evaluating a complain under this standard the facts alleged are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Williams is proceeding *pro se*, his allegations are construed liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). Nevertheless, even William's *pro se* complaint must allege sufficient facts to support a claim. *Id.*

In essence, a complaint must provide the defendant with "fair notice" of what the plaintiff's claim is and the grounds on which it rests. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam)). To provide fair notice, the complaint must identify who the defendants are and *what actions they took* in relation to the plaintiff's claims. *Id.* at 93. That does not mean that a complaint has to "include

---

[2] Williams is still obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

3

every name, date, and location of the incidents at issue." *Id.* But it does have to have enough information, stated with enough clarity, that a defendant could "reasonably be expected to respond." *Id.*

### III.   DISCUSSION

Williams asserts violation of his rights under the Sixth, Eighth and Fourteenth Amendments. Accordingly, his claims are governed by 42 U.S.C. § 1983, which "gives a federal remedy against state officials who, acting under color of state law, deprive 'any citizen of the United States . . . of any rights, privileges, or immunities secured by the [U.S.] Constitution and laws.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 793 (3d Cir. 2019). To state a claim under Section 1983, a plaintiff must allege: (1) "the violation of a right secured by the Constitution and laws of the United States"; (2) "committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Although Williams raises many claims of alleged constitutional harm, he names only three Defendants and has not named any individual prison officials involved in the alleged harm as Defendants. For the reasons stated below, Williams has failed to set forth a plausible claim against these Defendants.

####   A.   Claims against the GEO Group and Delaware County

The claims Williams seeks to pursue against the GEO Group and Delaware County must be dismissed pursuant to § 1915(e)(2)(B)(ii). The GEO Group is a private corporation under contract to provide services at GWHCF, and acts under the color of state law for doing so. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (acknowledging that entity contracted to perform medical services for county jail is state actor for purposes of section 1983); *French v. GEO Grp., Inc.*, 2018 WL 4929859, at *2 (E.D. Pa. Oct. 10, 2018) ("The GEO

Group acts under color of state law by providing services for the George W. Hill Correctional Facility."). To hold the GEO Group liable under section 1983, Williams must allege that his constitutional rights were violated as a result of a custom or policy adopted by the Geo Group. *French*, 2018 WL 4929859, at *2. *See also Monell v. Dep't of Social Servs*., 436 U.S. 658, 694 (1978). Similarly, to state a claim for municipal liability against Delaware County, Williams must also allege that the municipal Defendant's policies or customs caused the alleged constitutional violation. *Monell*, 436 U.S. at 694. To assert a plausible claim under § 1983 against either of these entities and survive screening pursuant to § 1915(e)(2)(B)(ii), Williams "must identify a custom or policy, and specify what exactly that custom or policy was" to survive screening. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (internal citation and quotation marks omitted).

Policy can be shown "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman*, 914 F.3d at 798 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). It is not enough, however, to only allege that a policy or a custom exists. Rather, a plaintiff "must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id*. (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be accomplished if a plaintiff "demonstrat[es] an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id*. (quoting *Bielevicz*, 915 F.2d at 850). With respect to a custom constituting the proximate cause of an alleged injury, a plaintiff must

establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted).

Alternatively, a plaintiff can also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

As the Court of Appeals for the Third Circuit has explained,

> If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure amounts to deliberate indifference to the rights of persons with whom the municipality's employees will come into contact. Ordinarily, this requires a plaintiff to identify a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary. Otherwise, the plaintiff needs to show that failure to provide the identified training would likely . . . result in the violation of constitutional rights—i.e., to show that the need for more or different training was so obvious.

*Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020) (internal citations, quotation marks and alteration omitted).

Williams' allegations fail to plead a claim under either theory of municipal liability because they are simply too vague, generalized, or conclusory. For example, he alleges that Defendants had a "policy of not following policy." He also alleges that Defendants' "failure to investigate correctional officer conduct amounts to an unconstitutional custom or policy." Williams also alleges that Delaware County has a policy to "hold people for petty

crimes longer than they have to, which results in due process violations."[3] These allegations are insufficient to state a plausible basis for *Monell* liability. Williams had pled that a policy exists but has neither elaborated on "what exactly that custom or policy was" nor provided any factual details about this custom or policy to state a plausible claim. *McTernan*, 564 F.3d at 658 (affirming dismissal of claims against a municipality because the plaintiff alleged only that he was injured by "the City's policy of ignoring First Amendment right[s]"). Using the words "custom" and "policy" is not enough. Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a plausible claim. *Id*. at 659; *see, e.g.*, *Szerensci v. Shimshock*, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

      Williams also fails to tie any alleged custom or policy to the alleged constitutional harms he suffered. In other words, he has not alleged the requisite affirmative link between a GEO Group or Delaware County municipal policy or custom and the various alleged constitutional deprivations. Along these lines, Williams has also failed to allege that the GEO Group or Delaware County had actual knowledge of prior similar conduct or failed to prevent the repetition of such conduct, and that this failure led to his injury. The absence of specific allegations about causation is fatal to Williams's claims against these municipal Defendants. *See, e.g.*, *Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014).

---

[3] The Court understands this allegation to relate to Williams's Sixth Amendment claim that his speedy trial right was violated. Williams alleges no facts to support this claim. But even if Williams had alleged facts, his claim that Defendants violated his Sixth Amendment right to a speedy trial would still fail. This is because "[a] speedy trial claim necessarily seeks dismissal of the indictment and leads to immediate release from confinement, so it must be brought through a habeas petition after exhausting state remedies." *Garrett v. Murphy*, 2022 WL 313799, at *1 (3d Cir. Feb. 2, 2022) (*per curiam*) (citing cases).

The Court understands Williams to also be asserting failure-to-train claims with respect to the events that occurred on December 14, 2021, *i.e.*, the alleged search of Williams's cell, the confiscation of his property, and the subsequent unreasonable force used on him by Sergeants Brown and Richburg.  Related to the search of his cell and the confiscation of his property, he alleges that Defendants "failed to properly train or supervise its employees . . . in the use of search and seizure techniques and/or methods to properly confiscate inmates property."  With respect to the alleged assault by the prison sergeants, Williams alleges that Defendants "had been aware of these physical abuse allegations in the past and intentionally failed to properly train or supervise officers for future incidents."

These allegations are too generalized and conclusory to sufficiently state a claim for failure-to-train.  Williams has not identified *where* the training was deficient and *how* that deficiency amounts to deliberate indifference to his constitutional rights.  Nor has he alleged with any particularity a pattern of similar constitutional violations that would have put GEO Group and Delaware County on notice that new training was required.  *See, e.g.*, *Torres v. Monmouth Cnty. Corr. Inst.*, 2021 WL 3773687, at *6 (D.N.J. Aug. 25, 2021) (dismissing failure-to-train claims where allegations were vague and the plaintiff did not allege "facts showing a pattern of prior incidents that would suggest a need for additional training").[4]

---

[4] Even if Williams had plausibly made *Monell*-type allegations as to the search of his cell and the seizure of his property, his claims would nevertheless be dismissed, as pled.  *See Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n. 15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.").  This is because Williams has no "legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in [his] prison cell[]." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Bell v. Wolfish*, 441 U.S. 520, 557 (1979) ("Assuming, *arguendo*, that a pretrial detainee retains such a diminished expectation of privacy after commitment to a custodial facility, we nonetheless find that the room-search rule does not violate the Fourth Amendment.").
  Similarly, allegations that Defendants violated Williams's due process rights by confiscating his property cannot form the basis of an underlying constitutional violation under § 1983 because a prisoner in Pennsylvania cannot state a constitutional claim based on the loss of his property since there are meaningful post-deprivation remedies afforded under the Pennsylvania Tort Claims Act.  *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir.

Accordingly, Williams has failed to state plausible municipal liability claims against the GEO Group and Delaware County based on a failure-to-train theory.[5]

The remainder of Williams's allegations—those involving the various conditions of his confinement, racial discrimination at GWHCF, and other incidents of misconduct by prison officials—also fail to state plausible claims for municipal liability under § 1983.  Williams has not tied any of these alleged constitutional harms to a custom or policy of the GEO Group or Delaware County.  Nor does he allege that the constitutional harm was the result of a failure to train prison employees or that a municipal failure amounted to deliberate indifference to Williams's constitutional rights.  Since Williams has failed to allege a basis for municipal liability against the GEO Group and Delaware County, his claims against those Defendants must be dismissed.

### B.     Claims against the Delaware County Jail Oversight Board

Williams also names as a Defendant the Delaware County Jail Oversight Board; however, he makes no allegations against this Defendant specifically.  The Delaware County Jail Oversight Board oversees GWHCF.[6]  Because they are "creature[s] of statute," jail oversight

---

2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.'" (alteration in original) (quoting *Hudson*, 468 U.S. at 533)); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property); *see also Shareef v. Moore*, 844 F. App'x 487, 488 (3d Cir. 2021) (*per curiam*) (finding no due process violation where inmate had access to adequate post-deprivation remedy to address confiscation and destruction of property and legal papers), *cert. denied*, 142 S. Ct. 146 (2021).

[5] Williams provides particularized facts about the alleged excessive force committed by Sergeants Brown and Richburg on December 14, 2021.  However, because Williams has not named those individuals as defendants in this civil action, the Court is asked only to determine whether plausible claims are stated against the municipal Defendants.  Because Williams has not stated a claim for municipal liability, the Court will not at this time address whether he has stated an underlying constitutional violation based on the use of force on December 14, 2021.

[6] The Delaware County Jail Oversight Board was established at a September 25, 2019 Delaware County Council meeting.  *See Jail Oversight Board*, Del. Cnty. Pa., https://delcopa.gov/departments/prison/JailOversightBoard.html (last accessed March 15, 2022).

boards are "political subdivision[s] of the government." *Veatch v. Allegheny Cnty. Bureau of Corr.*, 282 F. App'x 159, 160 (3d Cir. 2008).[7] As political subdivisions, therefore, jail oversight boards can be subject to liability under § 1983. *See Monell*, 436 U.S. at 690-91 ("Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies." (emphasis omitted)). Like the other municipal Defendants named here, the Delaware County Jail Oversight Board cannot be held responsible for the acts of its employees on a theory of vicarious liability, or *respondeat superior*. *Id.* at 691. Rather, to state a claim against the Board, Williams must allege a municipal policy or custom that caused his injury. *Id.*; *see also Murray v. Keen*, 2014 WL 940267, at *4 (M.D. Pa. Mar. 11, 2014) (applying *Monell* standard to claims against employees of the Allegheny County Jail Oversight Board); *Smith v. Indiana Cnty. Jail*, 2013 WL 425144, at *7 (W.D. Pa. Feb. 4, 2013) (dismissing § 1983 claims against Indiana County Prison Board where the plaintiffs failed to allege "direct participation, whether by custom or express policy" under *Monell*).

Williams has not made any specific allegations against the Delaware County Jail Oversight Board. He names the Board in the Complaint's caption and states only that the Board "has entered into a professional services contract with the GEO Group, Inc. to administrate the institution in accordance with the contract." Without any facts specially alleged against the Board, the Court is unable to determine what claims Williams asserts against it. As a result, Williams fails to state a plausible § 1983 claim against the Delaware County Jail Oversight Board.

---

[7] A Pennsylvania statute explicitly establishes jail oversight boards for each county in the state. *See* 61 Pa. Cons. Stat. Ann. § 1723(a) ("There is hereby established in each county a jail oversight board which shall be named the (Name of County) County Jail Oversight Board."). Jail oversight boards are provided certain powers and duties such as the "operation and maintenance of the prison and all alternative housing facilities" and "the oversight of the health and safekeeping of inmates." 61 Pa. Cons. Stat. Ann. § 1724(a).

IV.     **CONCLUSION**

As set forth more fully above, Williams's § 1983 claims against the GEO Group, Inc., Delaware County, and the Delaware County Jail Oversight Board are dismissed without prejudice for failure to state a claim. Because the Court cannot say at this time that Williams can never state plausible § 1983 claims, Williams will be afforded an opportunity to file an amended complaint if he is capable of curing the defects the Court has identified. Any amended complaint should clearly describe the factual basis for Williams's claims against the relevant defendants and state how each defendant was involved in the alleged denial of his Constitutional rights. If Williams fails to file an amended complaint within the time specified in the Court's Order, this matter will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

An appropriate Order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**